**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

MORGAN C. S.,                          §
                                       §
          Plaintiff,                   §
v.                                     §   Case No. 2:25-CV-00231
                                       §
FRANK BISIGNANO, Commissioner of the   §
Social Security Administration,        §
                                       §
          Defendant.                   §

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Morgan C. S.[1] challenges the final decision of the Commissioner of the Social

Security Administration (the "Commissioner" of the "SSA") that she is not disabled and thus not

entitled to disability and disability insurance benefits.  She raises one issue in this appeal.  The

undersigned recommends that the district court AFFIRM the decision of the Commissioner.[2]

***A. Proceedings.***

Plaintiff applied for SSA disability benefits in April 2022.  (Doc. No. 9-1, p. 99.)  She

alleged that her disability began in June 2021.  *Id.* at 99, 214.  Plaintiff's basis for disability was

that she suffered from diabetes, fatty liver, bipolar, an unspecified "neurological condition,"

neuropathy of the upper and lower extremities, stenosis of the back, and bladder incontinence.

*Id.* at 248.

---

[1]  The Committee on Court Administration and Case Management of the Judicial Conference of the United States
has recommended that, because of significant privacy concerns in social security cases, federal courts should refer to
claimants only by their first names and last initials.

[2]  This case has been referred to the undersigned magistrate judge for pretrial case management and
recommendations on dispositive matters.  *See* 28 U.S.C. § 636.

1 / 18

In February 2023, SSA denied Plaintiff's application. (Doc. No. 9-1, p. 121.) Plaintiff sought reconsideration, but her claim was denied again in April 2024. *Id.* at 130, 131, 133-35. Following that second denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 136. That hearing was held in November 2024. *Id.* at 58-77. In December 2024, the ALJ issued a decision finding that Plaintiff had not been under a disability as defined by the Social Security Act from April 20, 2022 through June 30, 2023, the date on which she was last insured. *Id.* at 19-46.

Plaintiff sought review of the ALJ's decision by the SSA's Appeals Council, but her request was denied in August 2025. (Doc. No. 9-1, pp. 6-8) (Notice of Appeals Council Action). At that point, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *Id.*

## B. The hearing and the ALJ's decision.

In rendering his decision, the ALJ conducted the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a)(4) and made findings at each stage. (Doc. No. 9-1, pp. 24-45.) At Step One, the ALJ found that Plaintiff met the Social Security Act's insured status requirement and that she had not engaged in substantial gainful activity since applying for disability. *Id.* at 24. At Step Two, the ALJ found that Plaintiff had multiple severe impairments including chronic colitis, diverticulosis, liver steatosis and fatty liver disease, anxiety disorder, bipolar disorder, depressive disorder, post-traumatic stress disorder, diabetes, and degenerative changes of the lumbar spine and cervical spine. *Id.* at 24-27 (citing 20 C.F.R. § 404.1520(c)). At Step Three, the ALJ found that while Plaintiff had multiple severe impairments, none of them met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27-30 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

Before reaching Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (Doc. No. 9-1, pp. 30-44.) He found that Plaintiff could

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can understand, remember, and carry out detailed (but not complex) instructions. She can use judgment to make detailed (but not complex) work-related decisions. She can have frequent interaction with supervisors, coworkers, and the public. She can deal with frequent routine changes in the work setting.

*Id.* at 30. After reviewing the medical evidence and opinions, the ALJ found that the RFC assessment was "supported by the record as a whole." *Id.* at 44.

Having determined Plaintiff's RFC, the ALJ found at Step Four that Plaintiff had no past relevant work, that she was 44 years old on the date last insured, and that she had at least a high school education. (Doc. No. 9-1, p. 44.)

At the hearing, the ALJ posed a hypothetical to the vocational expert ("VE"), asking whether there were jobs available in sufficient numbers in the national economy for someone meeting Plaintiff's characteristics. The VE answered:

> Yes, Your Honor, there are jobs that meet that hypothetical criteria. The first job is a document preparer. The DOT[3] code is 249.587-7018. The DOT classifies this at the sedentary exertional level. The SVP is 2. There are approximately 17,000 jobs in the national economy. The next job is … an escort vehicle driver. The DOT code is 919.663-022. The DOT classifies this at the sedentary exertional level. The SVP is 2. There are approximately 33,000 jobs in the national economy. Another job that meets that hypothetical criteria is a ticket checker. The DOT code is 219.587-010. The DOT classifies this at the sedentary exertional level. The SVP is 2. There are approximately 7,000 jobs in the national economy. Your Honor, technology has improved the methods used to perform the job of document preparer. It is my opinion, based on my professional experience, that this job now uses a computer and scanner instead of a typewriter

---

[3] The "Dictionary of Occupational Titles" is a publication of the Department of Labor, and is available at https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last visited May 19, 2026).

and microfilm.  It is also my opinion, based on my professional experience, that
this job would still be classified at the same exertion and skill level.

(Doc. No. 9-1, pp. 73-74.)  The ALJ then asked the VE to assume that the same hypothetical

individual would need two additional 15-minute breaks during the workday, and would be absent

from work two days per month.  *Id.* at 74.  The ALJ asked whether there would be any work

available to such an individual on a competitive full-time basis.  *Id.*  The VE responded in the

negative, adding that her response was based on her "professional experience, as the DOT does

not specifically address your hypothetical criteria."  *Id.*

Plaintiff's counsel did not object to the VE's testimony.  When given an opportunity to

ask questions himself, counsel asked the VE to assume that the hypothetical individual had

additional limitations:

> … the additional limitations being that any sitting or standing is only – is limited
> to 30-minute intervals.  So the individual could only sit or stand for 30 minutes at
> a time and would need the flexibility to switch between sitting and standing after
> those 30-minute intervals.  With the additional limitation as well that any
> operation of a motor vehicle would be incidental to the performance of the job.
> With those additional limitations, are the jobs that you provided under the first
> hypothetical still available?

(Doc. No. 9-1, p. 75.)  The VE replied:

> The incidental driving of the motor vehicle would eliminate the job of an escort
> vehicle driver.  In reference to the sitting and standing for 30 minutes at a time, it
> is my opinion based on my professional experience, if the hypothetical individual
> would be off task for 10 percent or more of the workday during those transition
> periods, the job of the document preparer and the ticket checker would then be
> eliminated.

*Id.*  The VE explained that a five-minute off-task break between the 30-minute intervals would

result in the hypothetical individual's being unable to maintain competitive work.  *Id.* at 75-76.

Plaintiff's counsel did not ask any questions regarding Plaintiff's ability to engage in pushing or

pulling of leg or arm controls.

4 / 18

At Step Five, relying on the VE's testimony, the ALJ found that there are jobs that exist in significant numbers that Plaintiff could perform, including document preparer, escort vehicle driver, and ticket checker. (Doc. No. 9-1, p. 45.) After completing the five-step sequential analysis, the ALJ concluded that Plaintiff had not been disabled during the relevant period, as defined in the Social Security Act. *Id.* (citing 20 C.F.R. § 404.1520(g)).

Further facts necessary to the disposition of this case are set forth in the discussion below.

### C. Plaintiff's appeal, the Commissioner's response, and Plaintiff's reply.[4]

On appeal, Plaintiff argues that the VE incorrectly characterized the job of escort vehicle driver as being sedentary in nature, and that the correct interpretation of the applicable SSA regulation would result in that occupation's characterization as light work. (Doc. No. 11, p. 3.) Plaintiff claims that the ALJ's adoption of the VE's characterization this amounted to an error of law. The SSA's applicable regulation's definition of "light work," Plaintiff says, includes "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* (citing 20 C.F.R. § 404.1567(b)). She asserts that one working as an escort vehicle driver "frequently presses the accelerator pedal and occasionally presses the [brake]. There is no safe way to drive a car unless the driver is prepared and able to constantly operate leg controls such as these. Therefore, this occupation is light work as a matter of law – not sedentary." *Id.* Plaintiff further argues that after subtracting the wrongly-included escort vehicle driver occupation from the total, the remaining jobs of document preparer and ticket checker amount to an insufficient number of jobs in the national economy. *Id.* at 5.

---

[4] The record citations in the parties' briefs do not comport with the Court's instructions. The Court directed the parties (using **boldface, underlined** text) that "all citations to the record shall be according to the Court's docket entry (i.e., Doc. No. 9-1, p. 6) instead of to the administrative transcript page number." (Doc. No. 10, p. 2.) Both parties' briefs, however, do the opposite: they contain citations only to the administrative transcript page number. Future briefs should comply with the Court's instructions, please.

The Commissioner responds that Plaintiff, through counsel, failed to object at the hearing to the VE's characterization of escort vehicle driver work as being sedentary. (Doc. No. 14, p. 5.) The Commissioner acknowledges that "[it] is possible for opinions to vary as to whether the escort vehicle driver occupation should be categorized as sedentary work." *Id.* at 6 (citing *Harris v. Commissioner of Social Security*, No. 1:20-cv-00910, 2022 WL 421121, at *3 (W.D. La. Jan. 24, 2022), *adopted*, 2022 WL 421080 (W.D. La. Feb. 10, 2022) (including escort vehicle driver among "sedentary" jobs)). Nevertheless, the Commissioner contends that "the label of 'sedentary' is not determinative in and of itself" given Plaintiff's age and education, because the "determinative issue is whether Plaintiff was capable of performing the work identified and whether there were a significant number of jobs this Plaintiff could perform." *Id.* The Commissioner points out that Plaintiff did not present any evidence at the hearing of limitations in the use of arm or leg controls, and argues that she should not be permitted to do so now for the first time in federal court. *Id.* at 6-7. As well, continues the Commissioner, the remainder of the record does not support a finding that Plaintiff had limitations on the use of arm or leg controls. *Id.* at 7. The Commissioner concludes that in any event, even if the escort vehicle driver job were excluded from the mix, the remaining jobs in the national economy still existed in sufficient numbers to support a finding that Plaintiff was not disabled. *Id.* at 7-8.

Plaintiff has replied to the Commissioner's response. (Doc. No. 15.)[5] She argues that "words of regulations matter" and that the SSA exercised its authority to define the terms

---

[5] The scheduling order in this case specifies that reply briefs are not permitted without leave of court. (Doc. No. 10, p. 2.) Plaintiff did not seek leave to file her reply brief. Counsel for Plaintiff is cautioned not to file reply briefs in this Court without first obtaining leave. The Court may strike reply briefs that are filed without required leave.

The Commissioner, however, did not object to the reply brief or seek to strike it. The undersigned exercises discretion to consider the reply brief, to the extent such consideration is otherwise appropriate.

"sedentary" and "light work" as it did.  *Id.* at 2-3.  There may be a conflict between the definitions in Labor Department's Dictionary of Occupational Titles and the SSA's regulations, says Plaintiff, but the SSA's definition is what matters here.  *See id.* at 3.  Plaintiff also argues that she did not waive the issue of limitations regarding arm and leg controls because of the "patent textual inconsistency that would rise to the level of legal error."  *Id.* at 5 (emphasis deleted).  "In this case, there is no substantial evidence in this record that an escort vehicle driver can perform that job's essential duties of driving the car without operating foot controls – as would necessarily peg the occupation squarely within the sedentary definition."  *Id.*  Finally, Plaintiff argues that there is evidence in the record indicating that she did have impairments that affect her driving abilities.  *Id.* at 5-6.

## D.  *Governing law.*

### 1.  *Standard of review.*

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is "exceedingly deferential," *see Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012), and is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard.  *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).  Substantial evidence is "more than a mere scintilla and less than a preponderance."  *Perez*, 415 F.3d at 461 (cleaned up).  This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence

weighs against the Commissioner's decision.'" *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  Rather, the court must scrutinize the record to determine whether substantial evidence is present.  *Id.* ("Conflicts in the evidence are for the Commissioner to resolve.").  The Commissioner's decision is "granted great deference and will not be disturbed unless a reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (cleaned up).  "If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (cleaned up).  The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

Generally, where the Commissioner applies an incorrect legal standard in evaluating the evidence, the decision must be reconsidered.  *See Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989).  It is the plaintiff's burden to show that the ALJ committed error.  *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).  Any such error must also be tested for prejudice: remand is not required if the error is not shown to be harmful.  *See Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009).  The burden to show harm from a legal error also rests with the plaintiff.  *See Jones*, 691 F.3d at 734-35.

## 2. *Qualification for benefits.*

To qualify for disability or disability insurance benefits, "a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923. A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled for the purposes of disability insurance and thus entitled to disability benefits, the ALJ employs a five-step approach which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. § 404.1520. The initial burden of proof lies with the claimant on the first four steps. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). At Step Five, the burden shifts to the Commissioner, who must show that the claimant can perform other substantial work in the national economy. *Id.* If the ALJ identifies other substantial work that the claimant can perform, then the burden shifts back to the claimant to show why he or she cannot perform that work. *See Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). The ALJ may cease the analysis at any step upon finding that the claimant is (or is not) disabled. *See Copeland*, 771 F.3d at 923.

### E. Analysis.

#### 1. The ALJ applied the correct legal standard, and his decision was supported by substantial evidence.

Plaintiff argues that the ALJ wrongly found that the escort vehicle driver occupation is "sedentary" as opposed to being classified at the light exertional level. The ALJ's subsequent finding that jobs were available in significant numbers in the national economy, Plaintiff says, is therefore without sufficient basis in the record. Plaintiff is entitled to no relief.

The SSA's regulations regarding physical exertion requirements define "light" work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ….

20 C.F.R. § 404.1567(b). "Sedentary" work, meanwhile, is not exertion-free:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

A Social Security Ruling provides insight into the SSA's interpretation of the "pushing and pulling" portion of its definition of light work:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, *which require greater exertion than in sedentary work;* e.g.,

> *mattress sewing machine operator, motor-grader operator, and road-roller*
> *operator (skilled and semiskilled jobs in these particular instances).*

SSR 83-10, *Titles II and XVI: Determining Capability to Do Other Work – the Medical-*

*Vocational Rules of Appendix 2*, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (emphasis added).

Meanwhile, the escort vehicle driver occupation is defined in the DOT as involving the

> driv[ing of a] vehicle equipped with warning lights and signs to escort trucks
> hauling mobile homes on public thoroughfares: Precedes escort and maintains
> specified distance between pilot vehicle and escort to provide warning to other
> motorists and to clear traffic at locations.  Communicates by two-way radio with
> truck and other pilot vehicle drivers to coordinate changes in speed and route,
> emergencies, or traffic congestion.

DOT 919.663-022 (G.P.O.), 1991 WL 687886 (4th ed. 1991).  There is no explicit mention of a

requirement to engage in pushing or pulling of leg or arm controls.  The escort vehicle driver

occupation is classified in the DOT as being "sedentary" work, which the DOT defines like this:

> Exerting up to 10 pounds of force occasionally … and/or a negligible amount of
> force frequently … to lift, carry, push, pull, or otherwise move objects, including
> the human body.  Sedentary work involves sitting most of the time, but may
> involve walking or standing for brief periods of time.  Jobs are sedentary if
> walking and standing are required only occasionally and all other sedentary
> criteria are met.

*Id.*

Plaintiff's view is that the accelerator and brake pedals in any kind of motor vehicle are

the kind of leg or foot controls that place the driving of an escort vehicle in the category of

"light" work.  (Doc. No. 11, p. 3.)  The ALJ, Plaintiff reasons, therefore erred as a matter of law

by agreeing with the VE's testimony that the occupation was sedentary, despite that testimony's

consistency with the DOT's classification.  *See id.*

Plaintiff's argument fails to persuade.  As Social Security Ruling 83-10 clarifies, not just

any foot control usage elevates an occupation from sedentary work to light work.  The SSA's

11 / 18

definition highlights that light work requires a good deal of walking or standing.  At the same time, the definition recognizes that a few types of work, although performed while seated, nonetheless require meaningful exertion – exertion exceeding that needed for sedentary occupations.  The occupational examples given in the ruling illustrate this distinction.  Rather than specifying occupations related to driving cars or light trucks (the tools of the escort vehicle trade), Ruling 83-10 cites occupations that require the use of a quantum of strength in either the upper or lower body that is sufficient to take the exertion level beyond that of sedentariness: mattress sewing machine operator; motor-grader operator; and road-roller operator.  This clarification distinguishes such occupations from those seated occupations that require nothing more than the use of one's foot to depress an ordinary car accelerator or brake pedal.  Subsequent cases have recognized this distinction.  *E.g.*, *Alexander v. Saul*, No. 4:18CV1122, 2020 WL 619502, at *1 (E.D. Mo. Feb. 10, 2020) (ALJ found that claimant could not use lower extremities for pushing or pulling leg controls, but his ability to "operate ordinary foot pedals, such as to drive a car or operate a milk shake mixer, was unlimited"); *Bailey v. Comm'r of Soc. Sec.*, No. 13-CV-2858, 2016 WL 3962950, at *7 (E.D.N.Y. July 21, 2016) (ALJ found that claimant had RFC to perform sedentary work but could only "frequently operate car pedals"); *Hedrick v. Astrue*, No. 4:12CV00018, 2013 WL 594221, at *1 n.3 (W.D. Va. Feb. 15, 2013) (ALJ found claimant's RFC to permit sedentary work, except that it allowed only occasional operation of foot controls; VE testified that escort vehicle driver work was sedentary because escort vehicles are typically equipped with cruise control and therefore would involve no more than occasional use of foot controls); *accord Prinkey v. Astrue*, Civ. No. 11-65J, 2012 WL 4596184, at *4 (W.D.

Pa. Oct. 1, 2012) ("the examples set forth in SSR 83-10 suggest that light sitting jobs generally involve the operation of machinery").[6]

Meanwhile, the parties have identified (and the Court's research has unearthed) no case squarely considering the question and finding that the occupation of escort vehicle driver is anything other than sedentary in nature. Two cases have come close to reaching the issue. In one, a claimant advanced an argument similar to Plaintiff's here, that the characterization of the escort vehicle driver occupation as sedentary was incorrect because the job "necessarily involves the use of foot controls" and thus elevated the classification to the light exertion level. The court did not decide the issue, however, finding that any error was harmless. *Richards v. Astrue*, No. CV-11-S-2805-S, 2012 WL 1566231, at *2 & n.9 (N.D. Ala. Apr. 27, 2012). In the other, the court surmised that work as an escort vehicle driver "would require fairly extensive use of foot controls" but declined to decide whether the occupation was sedentary because the case was already being remanded on different grounds. *Adkins v. Astrue*, No. 309-CV-217, 2010 WL 3782388, at *9-*10 (N.D. Ind. Sept. 21, 2010). Other cases have seemed to simply assume the occupation's sedentariness. *E.g.*, *Harris v. Commissioner of Social Security*, No. 1:20-cv-00910, 2022 WL 431121, at *3 (W.D. La. Jan. 24, 2022), *adopted*, 2022 WL 421090 (W.D. La. Feb. 10, 2022) (upholding ALJ's Step Five decision that included the occupation among other sedentary positions in determining whether the plaintiff was disabled); *Mark E. v. Comm'r, Soc. Sec. Admin.*, No. 2:22-cv-01528, 2024 WL 2048688, at *3 (D. Or. May 7, 2024) (same).

---

[6] This distinction makes sense. Following Plaintiff's logic, an occupation would convert from sedentary work to light work if it required a claimant to so much as use a joystick (a hand control, after all) or a wawa pedal (a foot control). The SSA's definition of light work is intended to account for increased exertion above the sedentary level, not to exclude from unquestionably sedentary activity the pressing of a button or the tapping of a toe.

In one case, a plaintiff argued that a non-DOT source classifies the escort vehicle driver position as light work rather than sedentary. *See Kimberly M. v. Kijakazi*, No. 2:22-cv-351, 2023 WL 4982794, at \*5-\*6 (E.D. Va. July 11, 2023), *adopted*, 2023 WL 4977756 (E.D. Va. Aug. 3, 2023) (discussing a resource for DOT data called "SkillTRAN Job Browser Pro"). But ALJs are not required to resolve conflicts between a VE's testimony and non-DOT sources. *See Wilson v. Berryhill*, No. 3:16CV71, 2017 WL 5056420, at \*7 (S.D. Miss. June 19, 2017); *see also Kimberly M.*, 2023 WL 4982794, at \*6 (citing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018); *Spurlock v. Berryhill*, No. 1:17-cv-411, 2018 WL 791302, at \*20-\*21 (M.D.N.C. Feb. 8, 2018) (ALJs required to resolve conflicts only between a VE's testimony and the DOT); *Wendei L.P. v. Comm'r of Soc. Sec.*, No. C18-5907, 2020 WL 606591, at \*1 (W.D. Wash. Feb. 6, 2020)). And in any event, Plaintiff did not present any such conflict to the ALJ, so the ALJ was entitled to rely on the VE's testimony on the point. *See Carey*, 230 F.3d at 146 (ALJ may rely on VE's uncontradicted testimony provided record reflects an adequate basis for doing so).[7]

Unsuccessful in showing that the ALJ applied an incorrect legal standard, Plaintiff's argument is therefore reduced to a normative one – that a classification of light work would be more accurate and so the escort vehicle driver occupation *should* be classified as light work. This argument too falls short. Perhaps the DOT could plausibly have classified the escort vehicle driver occupation as light work. But it doesn't: the DOT classifies it as sedentary. The VE testified, consistent with the DOT's classification, that the occupation is sedentary and that a

---

[7] Plaintiff attempts to justify her failure to raise the issue at the hearing by casting the VE's testimony as presenting a "patent textual inconsistency" rising to the level of legal error. (Doc. No. 15, p. 5 (emphasis deleted)). Plaintiff's failure to raise the issue is not so easily excused: if the error in the testimony was that obvious, Plaintiff should have raised it.

14 / 18

hypothetical person with Plaintiff's RFC could perform it.  The Commissioner's decision is therefore supported by substantial evidence, and the district court should affirm it.  Another district court has considered a similar argument and reached a similar conclusion.  *See Niedt v. Comm'r of Soc. Sec. Admin.*, No. CV 23-00537-TUC-JGZ, 2024 WL 3862281, at *8-*9 (D. Ariz. July 18, 2024), *adopted*, 2024 WL 3860939 (D. Ariz. Aug. 19, 2024).

Finally, other evidence in the record provides further support for the ALJ's decision that Plaintiff could perform the job duties of escort vehicle driver.  The key to the analysis is the requirement to engage in some pulling and pushing of arm and leg controls, because that, according to Plaintiff, is all that elevates the escort vehicle driver occupation above the exertional level of "sedentary."  In the record, the disability determinations completed by state agency medical consultants Dr. Stephen Gerrish (at the initial level, in February 2023) and Dr. Bradley Stephan (at the reconsideration level, in March 2024) both indicate that Plaintiff had the "unlimited" ability to engage in pushing and pulling with her upper and lower extremities, except that she could not lift more than 50 pounds occasionally or more than 25 pounds frequently. (Doc. No. 9-1, pp. 104 (Dr. Gerrish), 115 (Dr. Stephan).)  Plaintiff does not contend that the pushing or pulling of arm or leg controls would require that kind of lifting or carrying.  What's more, the January 2023 consultative examination by Dr. Hector Ortiz found that Plaintiff's upper and lower extremities had normal range of motion with no tenderness or stiffness.  *Id.* at 809. Dr. Ortiz noted that Plaintiff had "[g]rade 5/5 strength" in all upper and lower major muscle groups bilaterally.  *Id.*  A straight leg raising test on each of Plaintiff's legs yielded negative results for pain or other discomfort.  *Id.* at 808.[8]  Plaintiff points out some evidence that she

---

[8]  Other evidence in the record also indicates that Plaintiff was capable of driving.  *E.g.*, Doc. No. 9-1, p. 309 (third-party statement of Plaintiff's friend Johnson: Plaintiff drives a car when she goes out); Doc. No. 9-2, p. 1698 (Plaintiff is advised to get ultrasound follow-up and states that she will drive herself to appointment).

15 / 18

believes points in the other direction, *see* Doc. No. 15, pp. 5-6, but she did not suggest any limitation on pushing or pulling of arm or leg controls before the ALJ or the Appeals Council.  In any event, conflicts in the evidence are for the Commissioner to decide: the Court will not re-weigh the evidence.  *See Brown*, 192 F.3d at 496; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Ultimately, the ALJ justifiably relied on the VE's testimony, which in turn was consistent with the DOT.  Other record evidence supports the ALJ's conclusion as well.  From the evidence, a reasonable mind could accept as adequate a conclusion that Plaintiff possessed the ability to work as an escort vehicle driver.  *See Boyd*, 239 F.3d at 704 (finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision); *Richardson*, 402 U.S. at 401.  This is sufficient to affirm the Commissioner's determination, and the district court should do so.

### 2. If the ALJ erred, then remand is appropriate.

The Commissioner argues that even if the escort vehicle driver occupation were set to the side, the two remaining occupations undisputedly account for 24,000 jobs in the national economy, which the Commissioner argues is a sufficiently significant number.  (Doc. No. 14, pp. 7-8.)  Therefore, the Commissioner reasons, any error in including the escort vehicle driver occupation in the total number of available jobs was harmless.

The undersigned cannot side with the Commissioner on this point.  Precedent does suggest that the remaining two occupations (document preparer and ticket checker, a combined total of 24,000 jobs) themselves suffice to supply jobs in significant numbers in the national economy.  And generally speaking, courts have held "that what constitutes a 'significant' number is fairly minimal." *Ramos v. Berryhill*, No. 3:18-cv-1082, 2019 WL 3543659, at *11 (D.

Conn. Aug. 5, 2019) (cleaned up).  While there is no bright-line number in this circuit, *see Jones v. Bisignano*, No. SA-24-CV-1179, 2025 WL 4475752, at \*5 (W.D. Tex. Dec. 3, 2025), *adopted*, 2026 WL 359923 (W.D. Tex. Feb. 5, 2026), many courts have concluded that a total of 25,000 or fewer jobs was sufficiently significant.  *See id.* at \*5 & nn.3-4 (collecting cases holding that job totals ranging from 16,566 to 25,000 were sufficient); *Bryant v. Kijakazi*, No. 6:22-CV-01098, 2023 WL 12008469, at \*5 (W.D. Tex. Sept. 11, 2023) (citing *Taskila v. Comm'r of Soc. Sec.*, 918 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs was significant).

But the harmlessness standard in this context requires that it be "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."  *Keel*, 986 F.3d at 556.  That is too wide a gap to bridge here.  The ALJ never found that 24,000 jobs was a significant number.[9]  There is a difference between – on one hand – upholding an ALJ's finding that 24,000 jobs is a significant number and – on the other – supplying a finding that 24,000 jobs is a significant number as a matter of law.  *Cf. Jones*, 2026 WL 359923, at \*4 (overruling claimant's objection and finding that magistrate judge did not supply a significant numbers finding).  The Commissioner essentially asks the Court to find that it is inconceivable that any reasonable ALJ would have concluded that 24,000 jobs is not a significant number.

Some number of jobs can be significant as a matter of law.  *See, e.g., Zimmerman v. Astrue*, 288 F. App'x 931, 938 (5th Cir. 2008) (declining to remand where evidence showed there were 240,000 jobs in the national economy even after disregarding one occupation).  But 24,000 seems too small a number to make such a sweeping conclusion, and the undersigned will not recommend such a finding here.  Should the district court conclude that the ALJ applied an

---

[9] Acknowledged, this is largely because Plaintiff never called upon the ALJ to make such a finding by objecting to the inclusion of the escort vehicle driver occupation.  But still, the ALJ did not make the finding.

17 / 18

incorrect legal standard, then remand is appropriate. On remand, the ALJ could still consider whether the remaining jobs amount to a significant number.

### F. Conclusion and recommendation.

Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the district court AFFIRM the Commissioner's final decision and DISMISS this appeal with prejudice.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on May 29, 2026.

MITCHEL NEUROCK
United States Magistrate Judge

18 / 18